IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALDEN KAIAOKAMALIE, ET AL., | Civ. No. 13-00383 JMS-RLP |
| Plaintiffs, | ORDER OVERRULING OBJECTIONS IN PART, AND ADOPTING AS MODIFIED FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT MATSON TERMINALS, INC.'S MOTION FOR APPROVAL OF FLSA SETTLEMENT AND DISMISSAL OF CLAIMS WITH PREJUDICE, ECF NO. 90 |
| vs. | |
| MATSON TERMINALS, INC., | |
| Defendant. | |

**ORDER OVERRULING OBJECTIONS IN PART AND ADOPTING AS MODIFIED FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT MATSON TERMINALS, INC.'S MOTION FOR APPROVAL OF FLSA SETTLEMENT AND DISMISSAL OF CLAIMS WITH PREJUDICE, ECF NO. 90**

## I.  INTRODUCTION

Before the court are Plaintiff Alden Kaiaokamalie's ("Kaiaokamalie") Objections, filed pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.4, to a June 20, 2016 Findings and Recommendation of Magistrate Judge Richard Puglisi to Grant in Part and Deny in Part Defendant Matson Terminals, Inc.'s Motion for Approval of FLSA Settlement and Dismissal of Claims with Prejudice ("Findings

1

and Recommendation"). ECF No. 90. The twenty-three other Plaintiffs ("Non-objecting Plaintiffs"), as well as Defendant Matson Terminals, Inc. ("Matson"), do not object -- they ask the court to overrule Kaiaokamalie's Objections and adopt the Findings and Recommendation. ECF Nos. 94, 96 & 103.[1] Based on the following, the court OVERRULES the Objections in part and ADOPTS the Findings and Recommendation as modified.

## II. <u>BACKGROUND</u>

### A. **Factual Background**

Plaintiffs Kaiaokamalie, Christian Aarona, Darren Chu, Hensley Enos, Jesse Brown, Joseph C. Ulii, Joshua Smith, Melvin Luke, Nate Jackson, Phillip Pavao, Jr., Scott Kaeo, Arthur Smith, Barrett Gueco, Derwin Gealon, George Calventas, Keahilele Meyers, Matthew Murphy, Walter Harada, Wilsam Keanaaina, Carlton Kenui, Matthew Bright, Peter Kaapuni, Ia Saipaia, and Lawrence Dalija (collectively, "Plaintiffs") filed this action on July 30, 2013. ECF No. 1. Count One of the Fourth Amended Complaint alleges that Matson violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., by failing to pay

---

[1] All twenty-four Plaintiffs were originally represented by attorneys Michael Green, Earl Anzai, and Brian Mackintosh. These counsel eventually withdrew from representing Kaiaokamalie (given a conflict-of-interest), but continue to represent the twenty-three Non-objecting Plaintiffs. ECF No. 84. The court's consideration of Kaiaokamalie's Objections was delayed while Kaiaokamalie obtained separate counsel, ECF No. 87, and attorney Ted Hong filed the operative Objections on behalf of Kaiaokamalie on October 6, 2016 . ECF No. 90.

Plaintiffs "the regular salary and overtime pay owed to them as non-salaried, non-exempt employees."  Fourth Am. Compl. ¶ 46, ECF No. 26.  Among other relief, Plaintiffs sought "three years of regular and overtime pay for their uncompensated labor[.]"  *Id.* ¶ 47.  Counts Two, Three and Four concern only Kaiaokamalie; they allege that Matson retaliated against him in violation of Hawaii Revised Statutes § 378-63, and committed negligent and intentional infliction of emotional distress. *Id.* ¶¶ 48-67.  Count Five concerns Plaintiff Luke, alleging a claim for breach of contract.  *Id.* ¶¶ 68-72.

Following extensive discovery, the parties participated in a two-day mediation conducted by former State of Hawaii Circuit Judge Riki May Amano on August 24 and 25, 2015.  *See* E. Zorc Decl. (Mar. 22, 2016) ¶ 3, ECF No. 63-2 at PageID 431.  At the conclusion of the mediation, the parties reached an agreement to settle all issues in the litigation, with the terms of the agreement set forth in an August 2015 "Term Sheet" that was signed by all Plaintiffs (including Kaiaokamalie) and by counsel for both sides.  ECF No. 96-3; *see also* E. Zorc Decl. (Oct. 27, 2016) ¶ 3, ECF No. 96-1.

As the Findings and Recommendation correctly summarizes:

> The Term Sheet provides that, in exchange for releasing
> all claims against Defendant, Plaintiffs will receive from
> Defendant a payment of $625,000, to be split among
> Plaintiffs by a formula provided by Plaintiffs' counsel, as

well as Defendant's promise to pay Plaintiffs at an overtime premium rate for hours worked in excess of forty in a workweek.  ECF No. 63-4.  The Term Sheet also provides that Plaintiffs will continue to be paid a fixed salary covering forty hours of work in a workweek and provides for the calculation of overtime payments based on weekly salary.  *Id.*  The Term Sheet further provides that Plaintiffs will no longer be paid any "premium payments" they currently receive, that Plaintiffs with an annual salary of over $100,000 per year will not receive overtime payments, that Plaintiffs will receive overtime payments for work on holidays as opposed to any premium payments they currently receive, and that overtime will begin upon "completion of the settlement agreement" and not upon court approval of the settlement.  *Id.*  Finally, among other things, the Term Sheet requires Plaintiffs to "cooperate in submitting any documentation to aid in the process of obtaining Court approval and dismissal with prejudice of the entire lawsuit."  *Id.*  Although not all of the Plaintiffs were present at the mediation, between August 25 and August 31, 2015, all of the Plaintiffs, as well as the parties' counsel, signed the Term Sheet.  *See id.*

Findings and Recommendation at 3, ECF No. 74.[2]

The Term Sheet also provided that "[t]his settlement will be memorialized in a formal settlement agreement to be drafted by the Parties, which will include standard language."  ECF No. 96-3.  Accordingly, the parties

---

[2]  Plaintiffs' counsel subtracted $200,000 from the settlement amount of $625,000 as payment of fees, taxes, and costs, resulting in a net recovery to Plaintiffs of $425,000.  *See* Non-objecting Plaintiffs' Ex. 1, ECF No. 94-2.  Non-objecting Plaintiffs' counsel, and counsel for Matson, represent that $425,000 is approximately 53 percent of Plaintiffs' original overtime claim.  Supp. Reply at 4, ECF No. 103 at PageID 1240; E. Zorc Decl. (Oct. 27, 2016) ¶ 8, ECF No. 96-1 at Page ID 1122.

4

conducted further negotiations regarding that "formal settlement agreement,"

resulting in a December 2, 2015 written settlement agreement.  ECF No. 68-6.

Thereafter, however, only eighteen of the twenty-four Plaintiffs (along with

counsel for Matson) signed the December 2, 2015 written settlement agreement.

ECF No. 68-2.  Later, three additional Plaintiffs "committed to signing" the

December 2, 2015 written settlement agreement, leaving three Plaintiffs

(Kaiaokamalie, Luke, and Keanaaina) who refused to sign it.  *See* E. Zorc Decl.

(Mar. 22, 2016) ¶ 6, ECF No. 63-2.

On March 22, 2016, Matson filed a Motion for Approval of FLSA

Settlement and Dismissal of Claims with Prejudice, ECF No. 63, which was

referred to Magistrate Judge Richard Puglisi under 28 U.S.C. § 636(b)(1).  On June

20, 2016, Judge Puglisi issued his Findings and Recommendation, recommending

granting Matson's Motion in part and denying it in part.  ECF No. 74.  The

Findings and Recommendation concluded that the Term Sheet constituted an

enforceable agreement between the parties, containing all the essential terms of an

agreement to settle this litigation.  *Id.* at 8.  It found that the Term Sheet provides

for a payment by Matson of a specific sum of money as well as for future overtime

payments, in consideration for a release by Plaintiffs of all claims in the litigation,

with details as to how such future overtime payments will be calculated.  *Id.*  It

concluded that the Term Sheet was enforceable, having been signed by all parties within a week after the August 2015 mediation.  *Id.*[3]  The Findings and Recommendation further found, as a reasonable time implied by the record, that Matson's obligation to make overtime payments began on December 13, 2015.  *Id.* at 11-12.[4]

Finally, scrutinizing the settlement under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982) (requiring a court to determine whether a settlement in an FLSA action is "a fair and reasonable resolution of a

---

[3]  The Findings and Recommendation did not find the December 2015 written settlement agreement was enforceable, and thus did not address arguments regarding terms of that document.  Findings and Recommendation at 10.  Ultimately, it is sufficient to resolve this action based on the Finding that the Term Sheet itself is enforceable, and is fair and reasonable under *Lynn's Food Stores.*

[4]  No party has objected to this December 13, 2015 Finding, and the court agrees that it is a reasonable time for Matson's obligation to have begun.  *See City & Cty. of Honolulu v. Kam*, 48 Haw. 349, 354, 402 P.2d 683, 687 (1965) ("[W]here there is no provision as to the time for performance, a reasonable time is implied, to be determined upon consideration of the subject matter of the contract, the situation of the parties, what was contemplated at the time the contract was made, and other surrounding circumstances.") (citations omitted).  December 13, 2015 is the date that a majority of the Plaintiffs signed the December 2015 settlement agreement, and accounts for a reasonable period of time after the Term Sheet was signed to implement its terms. *See* Findings and Recommendation at 12-13.

In this regard, Matson implemented overtime payments to Plaintiffs and others effective April 2, 2016, "for other reasons and without any obligation to do so under the Parties' agreement."  Matson Ltr. (May 23, 2016) at 2, ECF No. 72.  Accordingly, as the parties discussed at the December 14, 2016 hearing, if the court otherwise adopts the Findings and Recommendation, then Matson may owe an additional amount to Plaintiffs for the period from December 13, 2015 until April 2, 2016.  And because the court does in fact adopt the Findings and Recommendation, the parties are to meet and confer regarding this additional amount (as the parties indicated they would at the hearing), and notify the court upon resolution of this issue, whereupon the action will be closed.

bona fide dispute over FLSA provisions"), the Findings and Recommendation concluded that the settlement is fair and reasonable, and recommended that it be approved.  *Id.* at 17.

## B.   Procedural Background

On July 4, 2016, Kaiaokamalie, Aarona, Enos, Keanaaina and Luke filed written objections to the June 20, 2016 Findings and Recommendation.  ECF No. 75.  On July 20, 2016, Aarona, Enos, Keanaaina and Luke withdrew their objections, leaving only Kaiaokamalie as an objecting party.  ECF No. 78.  On August 2, 2016, Plaintiffs' counsel (given a conflict of interest) withdrew from representing Kaiaokamalie.  ECF Nos. 83, 84.

On October 6, 2016, Kaiaokamalie (having retained separate counsel) filed renewed Objections to the Findings and Recommendation.  ECF No. 90.  On October 26 and 27, 2016, the Non-objecting Plaintiffs and Matson filed Responses to Kaiaokamalie's Objections.  ECF Nos. 94, 96.  Kaiaokamalie filed supplemental declarations in support of his Objections on November 15, 2016, ECF No. 97, and on December 7, 2016, ECF No. 101.  And on December 12, 2016, the Non-objecting Plaintiffs filed a Supplemental Reply.  ECF No. 103.  The court held a hearing on December 14, 2016.  ECF No. 104.

## III.  <u>STANDARD OF REVIEW</u>

When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise.").

Under a de novo standard, this court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered."  *Freeman v. DirecTV, Inc*., 457 F.3d 1001, 1004 (9th Cir. 2006); *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988).  The district court need not hold a de novo hearing; however, it is the court's obligation to arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendation to which a party objects.  *United States v. Remsing*, 874 F.2d 614, 618 (9th Cir. 1989).

///

///

8

## IV. **DISCUSSION**

Kaiaokamalie makes the following Objections to the Findings and

Recommendation:

> (1) "As an individual plaintiff, no 'formula' was never (sic) discussed, produced or agreed to by the individual Plaintiffs. Plaintiff Kaiaokamalie[] was never given or approved of any 'formula' how the amount of $625,000.00 was arrived at and what the basis was for the total amount and what criteria would be used to pay each individual plaintiff's claim."[5]

> (2) "The overtime calculation in the Term Sheet, is based on a forty-hour (40) work week. The Plaintiff and other plaintiffs work a thirty-five (35) hour work week."

> and

> (3) "The Term Sheet also unlawfully limits overtime if any plaintiff earns more than $100,000, annual salary. This is an unlawful limitation of overtime eligibility. Currently, individuals who earn $100,000.00 are exempt from overtime if they qualify under the 'Highly Compensated Worker Exemption.'" . . . .
> "Additionally, the ceiling for the 'Highly Compensated Worker Exemption,' will increase to $134,004.00 on or about December 1, 2015 (sic, 2016), and the ceiling in the Term Sheet may unlawfully limit the Plaintiff's statutory right to overtime."

---

[5] He makes a separate Objection that is substantively identical to this first Objection, and which the court considers to be part of this first Objection: "At no time was the total amount of $625,000 discussed with the Plaintiff. No formula and/or methodology was presented, discussed or approved by the Plaintiff or other individual plaintiffs." Kaiaokamalie Objections at 3-4 (internal citation omitted), ECF No. 90.

Kaiaokamalie Objections at 3-5, ECF No. 90 at PageID 1043-45.  Given these

Objections, he asks for an evidentiary hearing to assess the reasonableness of the

settlement.  *Id.* at 9, ECF No. 90 at PageID 1049.

Upon de novo review, the court OVERRULES the Objections in part

and ADOPTS the Findings and Recommendation, with one change to the Term

Sheet to reflect the intent of the parties.  The court concludes that the Term Sheet is

a binding enforceable settlement agreement between Plaintiffs and Matson.  The

settlement is fair and reasonable within the meaning of *Lynn's Food Stores*.

Further, the court substitutes "For the time period covered by this settlement, any

Plaintiff earning an annual salary of $100,000 or more will not be paid any

overtime" in place of the Term Sheet's clause that currently reads "Any Plaintiff

earning an annual salary of $100,000 or more at present or in the future will not be

paid any overtime."  To follow, the court explains each of these conclusions.

## A.      The Term Sheet is a Binding Enforceable Agreement to Settle This Litigation

Federal courts apply principles of local law to the construction and

enforcement of settlement agreements, even where federal causes of action are at

issue.  *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004).  And Hawaii law

provides "[w]here the evidence in the record shows that all the essential elements

of a contract are present, a compromise agreement among the parties in litigation

10

may be approved by the court and cannot be set aside except on grounds that would justify rescission." *Miller v. Manuel,* 9 Haw. App. 56, 63, 828 P.2d 286, 291 (1991). "Generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it." *Id.* "In order to be enforceable, a settlement agreement must have the traditional elements of a contract: offer, acceptance, consideration, and parties who have the capacity and authority to enter into the agreement." *Kaina v. Cty. of Maui,* 2008 WL 4108026, at *1 (D. Haw. Sept. 4, 2008) (citing *Amantiad v. Odum,* 90 Haw. 152, 162, 977 P.2d 160, 170 (1999)). "[T]here must be mutual asset or a meeting of the minds as to all the essential elements of the contract." *Id.* (citing *Mednick v. Davey,* 87 Haw. 450, 458, 959 P.2d 439, 447 (Haw. Ct. App. 1998)).

Applying these principles on de novo review, the court agrees with the Findings and Recommendation that the Term Sheet contains all the essential terms of a binding settlement -- the Term Sheet provides a specific payment amount, including promises regarding future overtime payments, in consideration for a release of all claims. It includes a method for determining future overtime payments based on a weekly salary. It was signed by Plaintiffs' and Matson's counsel, as well as by all Plaintiffs, including Kaiaokamalie. There is no evidence of fraud, coercion or bad faith in its execution -- on the contrary, the Term Sheet

was negotiated through a two-day mediation between experienced counsel from both sides before a former State Circuit Judge through a private dispute resolution firm.[6]  Further, even though the Term Sheet does not detail the exact amount of individual payments, it specifies that each Plaintiff's share will be paid "according to a formula to be provided to Defendant by Plaintiffs' counsel."  ECF No. 96-3. Importantly, it is a formula controlled by Plaintiffs (not Matson), and is a perfectly reasonable term given that each Plaintiff had individual pay rates and amounts of alleged overtime hours.

Kaiaokamalie's Objections -- that he was "never given or approved of any 'formula'" as to payment, and that "[a]t no time was the total amount of $625,000.00 discussed with [him]" -- are contrary to the record, and ultimately irrelevant to whether the Term Sheet is enforceable.  The record contains substantial evidence that Kaiaokamalie's prior counsel (Mackintosh) provided all Plaintiffs -- including Kaiaokamalie -- a settlement package notifying them precisely of these and other settlement details on October 2, 2015.  *See* ECF Nos. 94-2, 103-1, & 103-2.  Although this was after the Term Sheet was signed (and

---

[6] Although Plaintiffs' counsel eventually withdrew from representing Kaiaokamalie because a conflict of interest arose, this conflict did not arise until July or August 2016 after the Plaintiffs disagreed on whether to object to the Findings and Recommendation.  But the question now before the court concerns the Term Sheet, which was signed by all parties nearly a year earlier, in August 2015.  Nothing before the court indicates a conflict of interest at that relevant time period.

although Kaiaokamalie appears to dispute that he received the settlement package),

Kaiaokamalie does not dispute that he signed the relevant document (the Term

Sheet), which specifically provided:

> Payment in the gross amount of $625,000 [is] to be paid
> to Plaintiffs, which includes both payment to Plaintiffs
> and payments for Plaintiffs' attorneys' fees and costs.
> The payment to each of the Plaintiffs will be made to
> each Plaintiff according to a formula to be provided to
> Defendant by Plaintiffs' counsel.

Term Sheet ¶ 1, ECF No. 96-3.  He also does not dispute that he later agreed to a

specific settlement amount for himself as evidenced by his signature on October 5,

2015 acknowledging the amount.  ECF No. 94-4.  At minimum, he cannot dispute

that he knew the total settlement amount and that distribution to Plaintiffs would be

under a formula that his counsel would provide to Matson (as was discussed during

and after the mediation, *see* E. Zorc Decl. (Oct. 27, 2016) ¶¶ 4-6, ECF No. 96-1).[7]

---

[7] Kaiaokamalie contends that Mackintosh did not give him "[t]he sheet . . . with the specific calculations[.]"  Kaiaokamalie Decl. (Nov. 3, 2016) ¶ 6, ECF No. 97.  But even assuming this to be true, it does not matter for present purposes -- he also admits that "[t]he only other thing that was shown to me, was the sheet with the total amount of my portion of the settlement, which I signed."  *Id.* ¶ 7.  That is, no evidentiary hearing is necessary to resolve whether Mackintosh fully explained the formula to his then-client because the dispositive issues here are whether the Term Sheet constituted a binding agreement, and whether it is fair and reasonable, not whether Kaiaokamalie's prior attorney fully explained the basis of his amount of the settlement to him.  And to be clear, the court makes no finding, one way or the other, that Plaintiffs' counsel did not disclose information to Plaintiffs.  Rather, the court finds that the Term Sheet (as modified by this Order) is a binding settlement of this action, and that it is fair and reasonable under applicable standards.

If anything, Kaiaokamalie's Objections are a matter between him and his prior counsel.  He cannot dispute that he is bound by prior counsels' actions, and that his former counsel had full authority to act to settle this action on all Plaintiffs' behalf.  And in this regard, in this FLSA action, "it is federal law that controls" the extent of counsels' authority.  *Scott v. Burns Int'l Sec. Servs., Inc.*, 165 F. Supp. 2d 1133, 1140 (D. Haw. 2001), *reversed in part on other grounds*, 55 F. App'x 414 (9th Cir. 2003).  As *Scott* summarized:

> Plaintiff's original Complaint was filed in Federal Court under federal question jurisdiction.  It is federal law that controls this action and not the state law of Hawaii.  *See Camerican Int'l, Inc. v. L & A Juice Co., Inc.,* 1989 WL 79826 (9th Cir. July 12, 1989) ("State law provides the rule of decision on the question of an attorney's authority to bind his client to an agreement or stipulation when the action does not implicate rights and duties derived from federal law"); *Michaud v. Michaud,* 932 F.2d 77, 79 (1st Cir. 1991) (applying federal law to determine extent of attorney's authority to bind client to settlement); *Fennell v. TLB Kent Co.,* 865 F.2d 498, 501 (2nd Cir. 1989) ("where an action is based upon federal law, the authority of an attorney to settle that action is a federal question . . . [and] federal law is applicable[]")[.]

*Scott*, 165 F. Supp. 2d at 1139 (footnote and citation omitted).

Under federal common law, "[a]n attorney can bind his client to a settlement without express consent if he has apparent authority."  *Id.* at 1139 n. 5 (citing *Michaud,* 932 F.2d at 79; and *Fennell,* 865 F.2d at 501).

14

> [T]he burden of proving the lack of consent is placed on the party challenging the attorney's power.  Once a settlement has been entered into, a presumption is created that the attorney who enters into the settlement agreement had the authority to do so, and the burden to show that there was no consent to the settlement is placed on the person challenging the validity of the agreement.

*Id.* (citing *In re Artha Mgmt., Inc.,* 91 F.3d 326, 329 (2nd Cir. 1996); *Greater Kansas City Laborers Pension Fund v. Paramount Indus., Inc.,* 829 F.2d 644, 646 (8th Cir. 1987); *Edwards v. Born, Inc.,* 792 F.2d 387, 389-90 (3rd Cir. 1986); and *Thomas v. Colorado Tr. Deed Funds, Inc.,* 366 F.2d 136, 139 (10th Cir. 1966)).

"Where the client cannot affirmatively demonstrate the lack of consent, the settlement will be enforced by the courts." *Id.*; *see also, e.g.*, *Hamilton v. Willms*, 2007 WL 707518, at *9 (E.D. Cal. Mar. 6, 2007) (same).  And (aside from the fact that he and all other Plaintiffs actually signed the Term Sheet) Kaiaokamalie has offered nothing to demonstrate that his former counsel lacked authority to settle on his behalf.  In fact, the evidence is to the contrary.  *See* E. Zorc Decl. (Oct. 27, 2016) ¶ 7 ("Plaintiffs' counsel assured Matson's counsel during the mediation that he had the authority of all of the Plaintiffs to settle the lawsuit on the terms agreed to.  Various Plaintiffs also participated in the mediation sessions.").

///

///

**B.      The Settlement is Fair and Reasonable**

Under *Lynn's Food Stores*, "[w]hen employees bring a private action

for back wages under the FLSA, and present to the district court a proposed

settlement, the district court may enter a stipulated judgment after scrutinizing the

settlement for fairness."  679 F.2d at 1353; *see also Seminiano v. Xyris Enter., Inc.*,

602 F. App'x 682, 683 (9th Cir. May 12, 2015) ("FLSA claims may not be settled

without approval of either the Secretary of Labor or a district court.") (citing *Nall*

*v. Mal-Motels, Inc.,* 723 F.3d 1304, 1306 (11th Cir. 2013)).

In analyzing FLSA settlements, the court applies factors discussed in

*Almodova v. City and County of Honolulu*, 2012 WL 3255140, at *3 (D. Haw.

Aug. 8, 2012) (evaluating the strength of the plaintiffs' case; the risk, expense,

complexity, and likely duration of further litigation; the amount offered in

settlement; the extent of discovery completed and the stage of the proceedings; the

experience and views of counsel; and the reaction of the plaintiffs to the proposed

settlement).  *See also Almodova v. City & Cty. of Honolulu*, 2011 WL 4828708, at

*3 (D. Haw. Sept. 30, 2011) ("*Lynn's Food* requires the district court to scrutinize

the settlement for fairness, and determine that the proposed settlement is a fair and

reasonable [resolution] of a bona fide dispute over FLSA provisions.") (citing

*Lynn's Food Stores*, 679 F.2d at 1353, 1355) (internal editorial marks omitted)).

16

Applying these *Almodova* factors on de novo review, the court agrees

with the Findings and Recommendation that the settlement as set forth in the Term

Sheet is fair and reasonable. The $625,000 figure is a reasonable compromise of

the issues in this long-standing action. The figure was the result of extensive arms-

length negotiations during a mediation conducted before a former long-term State

Circuit Judge, involving experienced counsel for both sides. The mediation

followed after extensive discovery into issues regarding whether Plaintiffs were

entitled to overtime. For example, as to Kaiaokamalie, Matson cites much

evidence indicating that Kaiaokamalie was an exempt employee who was paid a

salary (meaning there is risk to him if the case proceeded to trial). *See* ECF No.

96, PageID 1109-11, Defs.' Opp'n at 11-13. Examining the record in this action,

and as the Findings and Recommendation summarize,

> Given the number of Plaintiffs involved, the contested
> legal and factual issues, and the fact that certain Plaintiffs
> have also asserted individual claims, further litigation of
> this matter would likely be complex and lead to
> significant expense. The Court therefore finds that the
> possible expense, complexity, and duration of further
> litigation weighs in favor of approval of the settlement.

Findings and Recommendation at 15-16.

In response, Kaiaokamalie argues that the settlement should be set

aside because he did not have proper notice of all of the settlement's terms. *See*

17

Kaiaokamalie Objections at 8, ECF No. 90 at PageID 1048 (indicating that an FLSA settlement should "make[] full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims") (quoting *Bonetti* v. *Embarq Mgmt. Co.,* 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009)).  Again, he contends his counsel did not tell him the "formula" that was used to arrive at the $625,000 settlement amount or that would be used to determine individual settlement amounts.  Kaiaokamalie Objections at 3-4, ECF No. 90 at PageID 1043-44.  But these arguments are irrelevant towards whether the settlement was fair and reasonable as a whole.  They do not change that the negotiated settlement amount is fair and reasonable, considering all the *Almodova* factors, and that Kaiaokamalie knew a formula provided by his own counsel, based on individual pay rates and contested hours, would be used (and was thus fully disclosed).  And again, Kaiaokamalie's Objections regarding a lack of notice are, at most, directed at whether his prior counsel fully explained the details to him, and not whether the settlement is a fair and reasonable compromise under the FLSA.[8]

---

[8] Thus, because any dispute as to whether Kaiaokamalie's former counsel fully explained the details of the settlement to Kaiaokamalie is not relevant, an evidentiary hearing is not necessary.

Finally, Kaiaokamalie's objection based on the Term Sheet's use of a 40-hour work week (versus a 35-hour work week) does not change the conclusion that overtime based on a 40-hour week in this case is fair and reasonable. The figure was specifically negotiated; it was a compromise given a dispute on how to calculate overtime. *See* Mackintosh Decl. (Dec. 12, 2016) ¶ 3, ECF No. 103-2 ("Plaintiffs desired and strongly advocated that their past and future overtime should be based on a 35-hour per week hourly calculation, as evidenced by their bi-weekly paychecks. Defendant, Matson Terminals, Inc., argued that and future overtime should be calculated by a fluctuating workweek method, i.e., overtime would be based on one-half of plaintiff's hourly salary, and that hourly rate would be derived by dividing a plaintiff's weekly salary by 40 hours. The parties compromised by agreeing to receiving 1.5 times Plaintiff's hourly salary, based on a 40-hour work week.").

In short, the court OVERRULES Kaiaokamalie's Objections and concludes that the settlement, as set forth in the Term Sheet, is a fair and reasonable resolution of this FLSA action.

**C.   The Court Modifies the Term Sheet's Provision Regarding Plaintiffs Earning an Annual Salary of $100,000 or More**

Kaiaokamalie's final Objection -- that "[t]he Term Sheet also unlawfully limits overtime if any plaintiff earns more than $100,000, annual

salary" -- is not true because eligibility for overtime depends on other factors besides the amount of pay.  But it does raise a valid point.  Specifically, the Term Sheet includes a provision stating that "[a]ny Plaintiffs earning an annual salary of $100,000 or more at present *or in the future* will not be paid any overtime."  ECF No. 94-5 (emphasis added).  The italicized phrase "or in the future" raises the potential of being contrary to federal law at some point in the future, depending on variables such as a Plaintiff's job duties -- a reading that the parties did not intend.

As discussed at the December 14, 2016 hearing, in including this provision, the parties were referring to an exemption for overtime for "highly compensated employees" set forth in 29 C.F.R. § 541.601.  When the Term Sheet was negotiated, § 541.601(a) provided that "[a]n employee with total annual compensation of at least $100,000 is deemed exempt under section 13(a)(1) of the Act if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified in subparts B, C or D of this part."

Effective December 1, 2016, however, § 541.601(b) changes the $100,000 limit by providing that:

> As of December 1, 2016, and until a new amount is published in the Federal Register by the Secretary and becomes effective, such an employee must receive total annual compensation of at least $134,004.  Beginning

January 1, 2020, and every three years thereafter, the
Secretary shall update the required total annual
compensation amount pursuant to § 541.607.

These changes highlight that a limitation in the Term Sheet based

solely on a $100,000 figure, if applicable at any time "in the future," could become

contrary to federal law, especially as the regulation may change from time to time.[9]

That is, in the future, the Term Sheet could be read to limit a Plaintiff's eligibility

for overtime *forever*, regardless of job duties, and regardless of the law at the time.

Simply put, the parties cannot contract around the law -- and this was clearly not

the intent of the Term Sheet.  Rather, as discussed at the December 14, 2016

hearing, the intent was to avoid the necessity (as part of a compromise in settling

this action) of litigating whether any Plaintiff was performing "executive,

administrative or professional" duties that could have otherwise exempted

someone from an overtime requirement.

Accordingly, after considering remarks of counsel, the court modifies

the Term Sheet's language to provide "For the time period covered by this

---

[9] The court is aware of *Nevada v. United States Department of Labor*, ___ F. Supp. 3d ___, 2016 WL 6879615 (E.D. Tex. Nov. 22, 2016), which enjoined the Department of Labor "from implementing and enforcing the following [FLSA overtime] regulations as amended by 81 Fed. Reg. 32,391; 29 C.F.R. §§ 541.100, 541.200, 541.204, 541.300, 541.400, 541.600, 541.602, 541.604, 541.605, and 541.607[.]"  *Id.* at *9.  Whether or not reasoning in that decision could apply to § 541.601, however, has no bearing on the issues in this case; the December 1, 2016 change only exemplifies that the applicable regulation may change periodically, and that the clause in the Term Sheet completely barring Plaintiffs from overtime into the future is problematic.

settlement, any Plaintiff earning an annual salary of $100,000 or more will not be paid any overtime" in place of the phrase "Any Plaintiff earning an annual salary of $100,000 or more at present or in the future will not be paid any overtime." This change eliminates that unintended possible reading of the Term Sheet.

## V.  CONCLUSION

The court ADOPTS as modified the June 20, 2016 Findings and Recommendation to Grant in Part and Deny in Part Defendant Matson Terminals, Inc.'s Motion for Approval of FLSA Settlement and Dismissal of Claims with Prejudice.  Plaintiff Kaiaokamalie's Objections are otherwise OVERRULED.  The August 2015 Term Sheet constitutes a binding settlement agreement, and is approved as a fair and reasonable settlement of this FLSA action.  Matson's obligations began on December 13, 2015.

As noted above, the parties are to meet and confer if any additional amounts are owed to Plaintiffs for the period from December 13, 2015 until April 2, 2016.  After notification from the parties that they have resolved this question,

///

///

///

///

the parties are to submit a stipulation for dismissal of this action for court approval

(or contact the court if necessary to discuss an appropriate course of action to close

the case).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 29, 2016.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Kaiaokamalie et al. v. Matson Terminals, Inc.*, Civ. No. 13-00383 JMS-RLP, Order Overruling Objections in Part, and Adopting as Modified Findings and Recommendation to Grant in Part and Deny in Part Defendant Matson Terminals, Inc.'s Motion for Approval of FLSA Settlement and Dismissal of Claims with Prejudice, ECF No. 90